UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KENYONNA CHRISTIAN,

    Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES, LLC, et al.,

    Defendants.
_____/

Case No. 18-13682
Honorable Victoria A. Roberts

**<u>ORDER: (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 44]; (2) GRANTING DEFENDANT GINNY'S MOTION FOR SUMMARY JUDGMENT [ECF No. 43]; and (3) DISMISSING THE CASE WITH PREJUDICE</u>**

**I.     INTRODUCTION**

Kenyonna Christian ("Christian") brings this case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  The only remaining defendant is Ginny's, Inc. ("Ginny's").  Christian claims Ginny's violated the FCRA negligently (Count I) and willfully (Count II).

Christian moves for summary judgment on Count I.  Ginny's moves for summary judgment on both claims.

The Court **DENIES** Christian's motion for partial summary judgment [ECF No. 44] and **GRANTS** Ginny's motion for summary judgment [ECF No. 43]. This case is **DISMISSED WITH PREJUDICE**.

## II. BACKGROUND

Other than where noted, the following facts are undisputed.

Ginny's is a mail order and electronic retail company that offers first-party credit to consumers and collects its own accounts from customers.

In August 2014, Christian placed an order with Ginny's and requested a Ginny's Credit account. Ginny's approved her request for a credit account and assigned her an account number ending in 976O (the "Account"). Christian's merchandise was shipped to her, with the full amount of the order charged to the Account.

Christian subsequently defaulted on her repayment obligations, and on January 31, 2015, the Account was charged off by Ginny's with an outstanding balance of $488. By charging off the Account, Ginny's no longer treated the Account balance as an asset for accounting purposes. However, "charging off" an account is not the same as accelerating a debt. Nor is it equal to an agreement to forego the debt. If a debt is accelerated, the full amount – including all monthly payments and interest – becomes due immediately. Thus, if a debt is accelerated, the debtor would not be

able to continue to make monthly payments in an amount less than the full amount due.

Ginny's never accelerated Christian's debt. Christian disagrees with this fact, summarily stating in her motion that Ginny's did accelerate the balance owed for the Account. However, in response to Ginny's first set of requests for admissions, Christian admitted that Ginny's "never accelerated" the debt owed on the Account. [ECF No. 43-6, PageID.438].

The parties disagree on whether Christian was still obligated to make monthly payments on the Account. The Court will discuss this in the analysis section below. However, after the Account was charged off, Ginny's continued to accept monthly payments on the Account. Christian's last payment made to the Account was on June 17, 2016, reducing the outstanding balance to $363.

In July 2018, Christian reviewed her Equifax credit disclosure; it showed her Ginny's Account had a "scheduled monthly payment" of $25.

On August 28, 2018, believing that she no longer had an obligation to make monthly payments on the Account, Christian submitted a letter to Equifax claiming that it was reporting inaccurate information regarding her Ginny's Account:

> You are reporting this trade line [sic] with a scheduled monthly payment, yet the account is charged-off and

3

> closed. The scheduled monthly payment amount of $25 is inaccurate. Please remove it from my credit report and replace it with $0.

[ECF No. 44-2].

Equifax responded to Christian in a letter dated September 19, 2018. Equifax stated that the "creditor" on the Account – i.e., Ginny's – "has verified to [Equifax] that the current status [of the Account] is being reported correctly." [ECF No. 44-4, PageID.487]. Ginny's continued to report a "scheduled monthly payment" of $25 for the Account.

Despite this letter from Equifax, Ginny's says it never received notice of this dispute (i.e., Christian's August 28, 2018 dispute letter) from Equifax or any other credit reporting agency. In support of this, Ginny's relies on the declaration of a credit compliance consultant affiliated with its business.

Christian filed this case in October 2018 in state court. The case was removed to this Court, and Christian filed an amended complaint.

Christian moves for summary judgment on Count I. Ginny's moves for summary judgment on both claims. Both motions are fully briefed. A hearing is unnecessary.

### III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as

4

to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. "The standard of review for cross-

motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).

## IV. ANALYSIS

### A. Governing Legal Standards

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Fed. Sav. Bank,* 696 F.3d 611, 614 (6th Cir. 2012) (citation omitted). The FCRA imposes liability on both credit reporting agencies ("CRAs") – like Equifax – and entities, such as creditors, that furnish information to CRAs for willful or negligent violations under the FCRA. *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004). Ginny's is a furnisher of information.

There are two components to a furnisher's obligations under Section 1681s-2 of the FCRA. Subsection (a) of Section 1681s-2 sets forth a furnisher's duty to report "accurate information" to CRAs. § 1681s-2(a); *Boggio*, 696 F.3d at 614. Subsection (b) of Section 1681s-2 sets forth a furnisher's duty to conduct an investigation in response to a notice of a dispute from a CRA. *Id.*; § 1681s-2(b). Although furnishers have obligations under both subsections, a private right of action only exists

6

under subsection (b). *Boggio*, 696 F.3d at 615-16; *Williams v. Equifax Info. Servs., LLC*, No. 18-02457, 2019 WL 3243737, at *3 (C.D. Cal. May 6, 2019) ("A private right of action can be based on an alleged violation of 15 U.S.C. § 1681s-2(b), but not on a violation of 15 U.S.C. § 1681s-2(a).").

When a CRA forwards consumer disputes to a furnisher, the FCRA requires the furnisher to: (1) conduct an investigation; (2) review any information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report any inaccuracies to all CRAs which may have received inaccurate information, and (5) correct any inaccuracies in the information it provides. 15 U.S.C. § 1681s-2(b). If a furnisher concludes that its reporting is "inaccurate or incomplete or cannot be verified" after conducting the investigation, it must correct the information by modifying, deleting, or permanently blocking the reporting of that item of information. *See* § 1681s-2(b)(1)(E). To establish that reporting is inaccurate, a plaintiff must "show that the information provided is false or that it contains a material omission or creates a materially misleading impression." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018).

### B. Accuracy of the Equifax Credit Report

Christian alleges that: (1) because her Ginny's Account is "charged off and closed," she "no longer has an obligation to make monthly

payments"; and (2) "Ginny's is inaccurately reporting its Errant Tradeline on [her] Equifax credit disclosure with an erroneous scheduled monthly payment of $25." [ECF No. 27, PageID.165]. Christian says Ginny's negligently and willfully failed to conduct a proper investigation of her dispute and negligently and willfully failed to review all relevant information available to it and provided by Equifax. She also claims that Ginny's negligently violated the FCRA because: (1) it failed to direct Equifax to report the tradeline for the Account with a monthly payment of $0; and (2) the tradeline of $25 per month for the Account is inaccurate and creates a misleading impression on her credit report with Equifax.

Ginny's argues that it is entitled to summary judgment because: (1) it never received notice of the dispute regarding the alleged monthly payment inaccuracy set forth in Christian's August 28, 2018 letter; (2) it accurately reported the Account information, including the monthly payment amount; and (3) there is no evidence that its reporting caused Christian actual damages.

Ginny's is not entitled to summary judgment on its lack of notice argument. A genuine issue of material fact exists regarding whether Ginny's received notice of Christian's August 28, 2018 dispute based on Equifax's September 24, 2018 letter to Christian stating that – in response

8

to her dispute letter – the "creditor" on the Account (i.e., Ginny's) "has verified to [Equifax] that the current status [of the Account] is being reported correctly." [ECF No. 44-4, PageID.487].

However, because the Court agrees with Ginny's that its reporting was accurate, Ginny's is entitled to summary judgment. *See Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 961 (E.D. Mich. 2016) ("Because the undisputed evidence reflects that there is no inaccuracy on Plaintiff's Experian credit report, Plaintiff's claims for negligent and willful violation of the FCRA must be dismissed.").

Ginny's demonstrates that "charging off" an account is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes; it does not discharge the debt or eliminate the debtor's payment obligations on the account. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010) ("The act of charging off a debt refers to a mechanism whereby creditors determine that a debt is unlikely to be repaid by the borrower and, therefore, cannot be collected. As a result, the loan is written off and deemed a loss of principal and interest. However, the charged off debt is not forgiven. As in the instant case, the charged off debt may then be sold to a collection agency for further efforts toward satisfaction."). *See also*

*Dye v. TransUnion, LLC*, No. 13-CV-01094, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) ("[Charged off] debt is still enforceable."); *Vilar v. Equifax Info. Servs., LLC*, No. 14-0226, 2014 WL 7474082, at *24 (D.N.M. Dec. 17, 2014) ("[E]very definition that the Court has found [for charged off debt] is consistent with [the definition set forth in *Dye*]: 'Writing off bad debt does not affect the fact or timing of a delinquency. A bank may write off bad debt for accounting purposes . . . while still reporting (accurately) that a debt is in fact more than 120 days overdue. In fact, such debt is still enforceable.'").

Christian appears to concede that charging off the Account did not mean "that she no longer had an obligation to pay [the] outstanding debt to Ginny's"; however, she says "she no longer had an obligation to make her previously scheduled monthly payments to Ginny's." [ECF No. 46, PageID.523]. In support of this contention, Christian relies on her unsupported statement that Ginny's accelerated her debt.

Christian also cites the Credit Reporting Resource Guide ("CRRG") in her briefs – which allegedly set forth industry standards for credit reporting – for the proposition that Ginny's was required to report her scheduled monthly payment amount on the Account as $0. Christian's arguments fail.

As discussed above in the Background, Christian admitted in response to requests for admissions that Ginny's never accelerated the debt owed on the Account. Thus, Christian was still able and obligated to make, and Ginny's was still able to collect, monthly payments on the Account that were less than the full balance, such that Ginny's reporting of a $25 monthly payment was not inaccurate. *See Williams v. Equifax Info. Servs., LLC*, No. 18-02457, 2019 WL 3243737, at *4 n.3, *6 (C.D. Cal. May 6, 2019) ("While a charge-off is considered to be 'written off as uncollectable' by the bank, the debt is still legally valid, and remains as such after the fact. The creditor legally has the right to collect. . . ." (citation omitted)).

The plaintiff in *Williams* alleged a similar claim as Christian – i.e., that a creditor reporting a monthly payment amount other than $0 on a charged off account is inaccurate under the FCRA. *Id.* at *4. The court dismissed plaintiff's claims, holding that: "Plaintiff has failed to include any factual allegations to the effect that she could not satisfy her debt to Ashro by making monthly payments in the amounts Ashro reported to Equifax. Without such allegations, there is not presently a sufficient allegation that any of the information furnished by Ashro is inaccurate, incomplete, or

11

otherwise misleading." *Id.* at *6. Christian's claims fail for the same reason.

Moreover, Christian's reliance on the CRRG is unhelpful. Christian fails to make any allegations about the CRRG or industry standards in the complaint, and – as Ginny's says – she fails to produce any evidence or authority to show that strict compliance with the CRRG is required to comply with the FCRA. *See Williams*, 2019 WL 3243737, at *6 (finding plaintiff's reliance on the CRRG unpersuasive where: (1) "there are no allegations regarding the CRRG in the Complaint"; (2) plaintiff "provided no authority for the position that any variance from industry standards results in the type of inaccuracy that supports a claim under the FCRA"; and (3) "courts 'have repeatedly held' that 'a deviation from industry standards' is 'alone insufficient to allege inaccurate or misleading reporting'" (quoting *Muehlenberg v. Experian Info. Sols., Inc.*, No. 17-cv-00392, 2017 WL 3705054, at *5 (N.D. Cal. Aug. 28, 2017)).

Finally, the cases Christian relies on are not entitled to any weight. Each of the cases she cites was decided on a motion to dismiss. Thus, they only addressed whether the complaint alleged sufficient facts – taken as true – to state a plausible claim under Rule 12(b)(6).

Christian fails to show that a genuine issue of material fact exists regarding her claim that Ginny's reporting of a $25 monthly payment is inaccurate under the FCRA. The undisputed evidence shows that there is no inaccuracy on Christian's credit report related to her Ginny's Account. Ginny's is entitled to judgment as a matter of law on Christian's claims for negligent and willful violation of the FCRA.

### V.  CONCLUSION

The Court: (1) **GRANTS** Ginny's motion for summary judgment [ECF No. 43]; (2) **DENIES** Christian's motion for partial summary judgment [ECF No. 44]; and (3) **DISMISSES** this case **WITH PREJUDICE**.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 30, 2020